UNITED STATES DISTRICT COURTEASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Aurea Jane Steelman, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Cause No. _____ |
| | § | |
| Jason Andrew Steelman, | § | |
| | § | |
| Defendant | § | |

## VERIFIED PETITION FOR RETURN, OR POSSESSION OF AND ACCESS TO CHILD AND PETITION FOR IMMEDIATE ISSUANCE OF SHOW CAUSE ORDER TO RESPONDENT

The Convention on the Civil Aspects of International Child Abduction, done at The Hague On October 25, 1980; International Child Abduction Remedies Act, 42 U.S.C. 11601 et seq.

I.  Preamble

1.     This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the Hague Convention" or Convention"), and the International Child Abduction Remedies Act [2] (hereinafter "ICARA").   The Convention came into effect in the United States of America on July 1, 1988, and was also ratified between the United States of America and United Kingdon on July 1, 1988.

2.     The objects of the Convention are as follows: (1) to secure the immediate return of a child wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that

---

[1]

    T.I.A.S. No. 11,670, at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986), a copy of which is attached as Exhibit A.

[2]

    42 U.S.C. 11601 et seq. (1995).   ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances.   See Distler v. Distler, 26 F. Supp. 2d 723, 727 (D.N.J. 1998).

---

rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.[3]

## II.  Jurisdiction

**3.**　　This Court has jurisdiction pursuant to 42 U.S.C. 11603 (1995)[4] and because this case involves the removal and retention of a child under the age of sixteen from her habitual residence of United Kingdom to the United States of America.[5]

## III.　Status of Petitioner and Child

**4.**　　The Petitioner, Aurea Jane Steelman (Mother) and the Respondent, Jason Andrew Steelman (Father) are the parents of ███████████ (Child), who was born on April 22, 2009, in West Yorkshire, England. Father and Mother were married on February 14, 2009, and at the time of the child's birth, resided together in West Yorkshire, England. Father and Mother were divorced on or about April 15, 2021. Since ████ was born, they have maintained a home in common where Mother was carrying out her responsibilities toward their daughter, ███. On or

---

[3]

　　As has been stated by other courts addressing Hague cases, the Convention therefore authorizes a federal district court to determine the merits of the abduction claim but does not allow it to consider the merits of any underlying custody dispute.　Morris v. Morris, 55 F. Supp. 2d 1156, 1160 (D. Colo. 1999) (recognizing that [p]ursuant to Article 19 of the Convention, [this Court has] no power to pass on the merits of custody); see also Currier v. Currier, 845 F. Supp. 916 (D. N.H. 1994) citing Friedrich v. Friedrich, 983 F.2d 1396, 1399 (6th Cir. 1993); Meredith v. Meredith, 759 F. Supp. 1432, 1434 (D. Ariz. 1991).　The court's role is not to make traditional custody decisions but to determine in what *jurisdiction* the child should be physically located so that the proper jurisdiction can make those custody decisions. Loos v. Manuel, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994).

[4]

　　A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute.　The Hague Convention is intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.　Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998) (citations omitted).

[5]

　　Toren v. Toren, 191 F. 3d 23 (1999).

---

about July 28, 2023, the child flew to Houston, Texas to visit Father, and she was to return to the United Kingdom on August 29, 2023.

On August 2, 2023, ████ contacted Mother via WhatsApp messenger and telephone and told her that she was going to live with Father in Texas and wasn't coming back after the holiday. Father said on the call that in Texas, "children from the age of 12 have the right to choose which parent they live with." Mother attempted to negotiate the return of their child via communication with Father and Child, but was unsuccessful.

5.    Chloe is now fourteen (14) years old. A copy of the child's birth certificate is attached as **Exhibit B**. The Convention applies to cases where a child under the age of sixteen (16) years has been removed from his or her habitual residence[6] in breach of rights of custody of a

---

[6]

   "Courts in both the United States and foreign jurisdictions have defined habitual residence as the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose for the child's perspective." Pesin v. Rodriguez, 77 F. Supp. 2d 1277, 1284 (S.D. Fl. 1999) (citations omitted), aff'd, Pesin v. Rodriguez, 244 F.3d 1250 (11th Cir. 2001); Morris at 1161 ("the law requires [the Court] to focus on the child in determining habitual residence"); see also In re Robinson, 938 F. Supp. 1339, 1341-42 (D. Colo. 1997).   It is a state of being or state of mind.   Habitual residence is the permanent physical residence of the child as distinguished from their legal residence or domicile. In Re Bates, No. CA 122-89, High Court of Justice, Family Div., England, February 23, 1989; Brook v. Willis, 907 F. Supp. 57, 61 (S.D.N.Y. 1995); Loos, 651 A.2d at 1080 (stating that it is immaterial that the concept of habitual residence lacks precision); see also T.B. v. J.B., 2000 WL 1881251, at *1 (Supreme Court of Judicature, England, December 19, 2000) (stating that it is important to remember that the Convention is concerned with the return of child to the country of their habitual residence and not with their return to any particular person).

---

petitioner, which the petitioner had been exercising at the time of the wrongful removal[7] or wrongful retention[8] of the child.

**6.**     At the time of Jason's wrongful removal and wrongful retention of ▉ (as specifically set forth in Part IV below), Mother was actually exercising custody rights within the meaning of Articles Three and Five of the Convention,[9] in that she is the mother of ▉ and has exercised custody rights over her daughter since she was born. Furthermore, ▉ was habitually a resident in the United Kingdom within the meaning of Article 3 of the Convention from her birth on April 22, 2009, until her wrongful removal and wrongful retention from the United Kingdom.

**7.**     Mother has requested the return of ▉ to the United Kingdom for periods of possession pursuant to her Request for Return/Access, a copy of which is attached hereto as **Exhibit C**.[10]   The Request for Return has been filed with the United States Department of State

---

[7]

"Article 3 of the Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention."   Lops at 935; "[t]he removal of a child from the country of his or her habitual residence is 'wrongful under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal."   Friedrich v. Friedrich, 78 F.3d 1060, 1064 (6th Cir. 1996); see Prevot v. Prevot, 59 F.3d 556 (6th Cir. 1995); Convention, art. 3.

[8]

"Wrongful retention" occurs when it is in breach of rights of custody attributed to a person under the law of the country in which the child was habitually resident immediately before the retention; and at the time of retention these rights were actually exercised, or would have been so exercised, but for the wrongful retention.   Convention, art. 3; Feder, 63 F.3d at 225; Wanninger v. Wanninger, 850 F. Supp. 78, 80-81 (D. Mass. 1994).

[9]

The issue of "custody" must be addressed under British law.   Pesin, 77 F. Supp. 2d at 1284; see also Whallon v. Lynn, 230 F.3d 450 (1st Cir. 2000); Friedrich v. Friedrich, 983 F.2d at 1402; Ohlander v. Larson, 114 F.3d 1531, 1541 (10th Cir. 1997) (stating that the Convention was meant, in part, to lend priority to the custody determination hailing from the child's state of habitual residence.   Pursuant to Article 14 of the Convention, this Court "may take notice directly of the law of . . . the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law . . . .; See also Fed. R. Civ. P. 44.1.

[10]

Given the urgency of this Hague Convention Petition, no authentication of any documents or information included with the Petition is required.   42 U.S.C. § 11605 (1995).

---

and the National Center for Missing and Exploited Children, the Central Authority of the United States of America under the Convention.

8.    █████ was born on April 22, 2009, and will be sixteen (16) years of age on April 22, 2026. At the time immediately before the wrongful removal and wrongful retention of █████, the child habitually resided in the United Kingdom within the meaning of Article 3 of the Convention. She was completely settled and integrated in England's life and culture. At the time of Mother's application to the Central Authority of the United States of America, Mother was located in the Contracting State of the United Kingdom.

### IV.   Wrongful Removal and Wrongful Retention of Child by Respondent

9.    Mother has rights of custody under British law pursuant to the Children's Act of 1989 and subsequent amendments, a copy of which is attached hereto as **Exhibit D**.   These laws prioritize the best interests of the child when determining custody arrangements.

Parental responsibility is defined in the Act as "all the rights, duties, powers, responsibilities and authority which by law a parent of a child has in relation to the child and his property". If the child's parents are married both have parental responsibility; if they are unmarried, the father does not automatically have parental responsibility however.

The removal of █████ from her home country of England is therefore a wrongful removal and wrongful retention within the meaning of Articles 3 and 5 of the Convention. Since removing █████, Father has wrongfully retained █████ in the United States of America.

10.    Mother had parental custody of █████ from her birth until July 28, 2023, when █████ flew to Texas so she could visit with her Father. When █████ flew to Texas on July 28, 2023, Mother and Father agreed that █████ would return to the United Kingdom on August 29, 2023.

11.     Upon information and belief, Father never intended returning ███ to the United Kingdom after ███ left the United Kingdom July 28, 2023.

12.     In light of the aforementioned British law and the Convention, ███ is currently being illegally held in custody, confinement and/or restraint by Father. Unless this Court takes immediate action to bring ███ and Father before the Court, irreparable harm will occur to the well-being of ███ in that ███ is denied all proper access to her Mother and her home, school, friends and culture, and is being wrongfully detained in Texas. Unless a show cause order is issued, Mother will continue to have no proper contact whatsoever with her daughter.

14.     Mother has never acquiesced or consented to the removal or retention of ███ from the United Kingdom or ███ s retention outside of the United Kingdom. <u>See</u> Supporting Verification of Aurea Jane Steelman, at the end of this Petition.

## V.   Provisional Remedies[11]

15.     Mother requests that the Court issue a show cause order and direct that the order be served immediately by United States Marshals on Father and that he be brought before this Court with the child forthwith.[12]   Section 5(b) (Provisional Remedies) of ICARA provides, *inter alia*, that, in a proceeding under Section 4(b) for the return of a child, No court exercising jurisdiction . . . may . . . order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied.   42 U.S.C.   11604.   In this case, the State law

---

[11]   This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition" 42 U.S.C. 11604 (1995).

[12]   Such an approach is consistent with the approach of other district courts faced with  equivalent concerns regarding the flight of a respondent following service of a petition for return under the Convention.   <u>See</u> <u>Fawcett v. McRoberts</u>, 168 F. Supp. 2d 595, 597 (W.D. Va. 2001).

---

referred to in Section 5(b) is that of Texas.   In Texas, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes. Texas Fam Code Sections 152.001 - 152.317 (Sept 1, 1999).   Texas law addresses the appearance of the parties and the child in such cases in Tex Fam Code Section 152.210.   That section authorizes this Court to order the appearance of the child and custodian or custodians *together*.   Id.   This Court therefore has the authority to order the immediate appearance of Father and the child together.

16.     Mother requests, for the wellbeing of ███, that she be given immediate access to ███, pending further hearing in this Court.

17.     Pending further hearing in this Court, it is requested that this Court issue an immediate order prohibiting the removal of ███ from the jurisdiction of this Court, taking into safe keeping all of the child's travel documents and setting an expedited hearing on the Petition for Return of Child to Petitioner.[13]

## VI.   Relief Requested

18.     WHEREFORE, Mother respectfully requests the following relief:

a.     an Order directing that the name of the child be entered into the national police computer system (N.C.I.C.) missing person section;

b.     an Order directing a prompt return of the child to her habitual residence of the United Kingdom or an Order directing a possession schedule for times that the child shall visit the United Kingdom, at Father's expense;

---

[13]   Such a Petition may also be treated as an application for a Writ of Habeas Corpus itself.   Zajaczkowski v. Zajaczkowska, 932 F. Supp. 128, 132 (D.Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus . . . pursuant to 28 U.S.C.A. 2243").; see also In re McCullough, 4 F. Supp. 2d 411 (1998).

c.    the issuance of an Order directing that the child, together with Father, be brought into this Court by any United States Marshal, federal officer or police officer;

d.    the issuance of an immediate Order prohibiting the removal of the child from the jurisdiction of this Court;

e.    an Order commanding Father to appear in this Court with the child to show cause why the child has been kept from her Mother in contravention of British law;

f.    an Order directing Father to pay Mother's legal costs and fees; and

g.    any such further relief as justice and its cause may require.

## VII.   Notice of Hearing

19.    Pursuant to 42 U.S.C. 11603(c), Father will be given notice of any hearing in accordance with Tex Fam Code Section 152.108 and the UCCJEA.[14]

## VIII.   Attorney's Fees and Costs Including Transportation Expenses Pursuant to Convention Article 26 and U.S.C. 11607

20.    Mother has incurred substantial expenses as a result of the wrongful removal and wrongful retention of the child by Father. Mother will submit a copy of all expenditures as soon

---

[14]     The Convention itself does not specify any specific notice requirements.    ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings.   42 U.S.C. 11603(c). In the United States, the Parental Kidnapping Prevention Act (PKPA) and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) govern notice in interstate child custody proceedings.   Klam v. Klam, 797 F. Supp. 202, 205 (E.D.N.Y. 1992).   The UCCJEA and Part (e) of the PKPA provide that reasonable notice and opportunity to be heard must be given to all parties before a custody determination is made.   The UCCJEA further provides that notice shall be given in a manner reasonably calculated to give actual notice. In Texas, the relevant statute is found in this State's UCCJEA in Tex Fam Code Section152.108.   The Notice section provides, in pertinent part, that notice and an opportunity to be heard shall be given in a manner reasonably calculated to give actual notice. Id..   Furthermore, in cases where flight of a respondent is at issue, federal courts have allowed substituted service in any manner reasonably effective to give the respondent notice of the suit.   Ingram v. Ingram, 463 So.2d 932, 936 (La.App. 1985).

as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful removal and retention.

21.     Mother respectfully requests that this Court award all legal costs and fees incurred to date as required by 42 U.S.C. 11607, reserving jurisdiction over further expenses.

### IX.     Declaration Pursuant to Uniform Child Custody Jurisdiction and Enforcement Act

22.     The details regarding █████ that are required to be provided under the UCCJEA are as follows:

a.     Mother believes that the present forced location of █████ is Longview, Texas.   Father has not provided an address.

b.     In the last five (5) years, █████ has lived with the Mother as follows:

i.     82 Mayfield Grove, Harrogate, North Yorkshire, HG1 5EY, United Kingdom; and

ii.     52 Church Avenue, Harrogate, North Yorkshire, United Kingdom, from October 18, 2023 until present, and that is where Mother is still currently living now.

b.     Mother believes that Father has initiated a proceeding concerning the child in another court.

c.     Mother does not know of any person or institution not a party to the proceedings who has physical custody of the child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the child.

Respectfully submitted,

---

The Webb Family Law Firm, P.C.
325 N. St. Paul Street
Suite 4450
Dallas, Texas 75201
Tel: (214) 871-2730
Fax: (214) 871-9339


By: _____
Natalie L. Webb
State Bar No. 24058782
Attorney for Aurea Jane Steelman

## <u>VERIFICATION</u>

I, Aurea Jane Steelman, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that the contents of the foregoing Petition are true to the best of my knowledge, information and belief.

2 April 2024
Date

_Aurea Steelman_
Aurea Jane Steelman

_K A Beckett_
Notary Public



The Notary Solution Limited
Windsor House, Cornwall Road,
Harrogate, HG1 2PW
Tel: 01423 369607



**VERIFIED PETITION FOR RETURN OF CHILD- STEELMAN**                                    Page 11

**EXHIBIT A**



HAGUE CONFERENCE ON
PRIVATE INTERNATIONAL LAW
*CONFÉRENCE DE LA HAYE*
*DE DROIT INTERNATIONAL PRIVÉ*

## 28. CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION[1]

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

CHAPTER I – SCOPE OF THE CONVENTION

Article 1

The objects of the present Convention are –

a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

Article 3

The removal or the retention of a child is to be considered wrongful where –

a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction*  (ISBN 90 12 03616 X, 481 pp.).

## Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

## Article 5

For the purposes of this Convention –

a) "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;

b) "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

### CHAPTER II – CENTRAL AUTHORITIES

## Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.

Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

## Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.

In particular, either directly or through any intermediary, they shall take all appropriate measures –

a) to discover the whereabouts of a child who has been wrongfully removed or retained;

b) to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;

c) to secure the voluntary return of the child or to bring about an amicable resolution of the issues;

d) to exchange, where desirable, information relating to the social background of the child;

e) to provide information of a general character as to the law of their State in connection with the application of the Convention;

f) to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;

g) where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;

h) to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;

i) to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

### CHAPTER III – RETURN OF CHILDREN

## Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child. The application shall contain –

a) information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;
b) where available, the date of birth of the child;
c) the grounds on which the applicant's claim for return of the child is based;
d) all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

e) an authenticated copy of any relevant decision or agreement;
f) a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;
g) any other relevant document.

## Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

## Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

## Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

## Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

## Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

a) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

b)    there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV – RIGHTS OF ACCESS

Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V – GENERAL PROVISIONS

Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

Article 23

No legalisation or similar formality may be required in the context of this Convention.

Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

a)    any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

b)    any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

CHAPTER VI – FINAL CLAUSES

Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

## Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

## Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

## Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

## Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –

(1)    for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;

(2)    for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.

## Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

## Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –

(1)    the signatures and ratifications, acceptances and approvals referred to in Article 37;

(2)    the accessions referred to in Article 38;

(3)    the date on which the Convention enters into force in accordance with Article 43;

(4)    the extensions referred to in Article 39;

(5)    the declarations referred to in Articles 38 and 40;

(6)    the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;

(7)    the denunciations referred to in Article 44.

In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.

**EXHIBIT B**

Application Number  14086603-1 GMB



QBDAD  400153

## CERTIFIED COPY  OF AN ENTRY

| | **BIRTH** | Entry No. 71 |
|---|---|---|

Registration district   Bradford and Keighley

Sub-district   Bradford and Keighley

Administrative area   Metropolitan District of Bradford

**CHILD**

1. Date and place of birth
Twenty-second April 2009
Airedale General Hospital, Steeton

2. Name and surname ▮▮▮▮▮▮▮▮

3. Sex
Female

**FATHER**

4. Name and surname
Jason Andrew STEELMAN

5. Place of birth
United States of America

6. Occupation
Officer, United States Airforce

**MOTHER**

7. Name and surname
Aurea Jane STEELMAN

8.(a) Place of birth
Carlisle, Cumbria

8. (b) Occupation
Civil Servant

9.(a) Maiden surname
MARSHALL

9. (b) Surname at marriage if different from maiden surname

10. Usual address (if different from place of child's birth)
8 Barleycote Road, Riddlesden, Keighley, West Yorkshire

**INFORMANT**

11. Name and surname (if not the mother or father)

12. Qualification
Mother

13. Usual address
(if different from
that in 10 above)

14. I certify that the particulars entered above are true to the best of my knowledge and belief
Aurea Steelman

Signature
of Informant

15. Date of registration
Fifth May 2009

16. Signature of registrar
H A Lockwood-Davies
Deputy Registrar

17. Name given
after registration,
and surname

CERTIFIED to be a true copy of an entry in the certified copy of* a register of Births, Still-births or Deaths in the District above mentioned. Given at the GENERAL REGISTER OFFICE, under the Seal of the said Office on        8th August 2023

*If the Certificate is given from the original Register, the words 'the certified copy of' are struck out.

CAUTION: THERE ARE OFFENCES RELATING TO FALSIFYING OR ALTERING A CERTIFICATE AND USING OR POSSESSING A FALSE CERTIFICATE. © CROWN COPYRIGHT

**WARNING: A CERTIFICATE IS NOT EVIDENCE OF IDENTITY.**

System No. 501736209

2340157  04/23  APS/A/SP



*Scanned by TapScanner*

**EXHIBIT C**



**Official Solicitor**

**International Child Abduction
& Contact Unit (ICACU)**

# ICACU APPLICATION FORM

Please read the '**ICACU Guide to making an application**' before completing this form.

Where possible please type the form.  You should double check the spelling of foreign names and addresses.  If more than one spelling is in use, please provide all alternative spellings.

**Section 1: Please indicate by putting a cross in the appropriate box what type of application you wish to make.  Please put a cross in one box ONLY.**

| | |
|---|---|
| **Request for return of the child(ren)** | |
| **Request for contact with the child(ren)** | X |
| **Request for registration and enforcement of an existing court order** | |

**Section 2: Details of the child(ren).**

**Child 1**

| | | | | | |
|---|---|---|---|---|---|
| Surname: | ███████ | | | | |
| First Names: | ███████ | | | | |
| (Please say if the child is generally known by a name other than their official name) | | | | | |
| Date of Birth (dd/mm/yyyy): | 22/04/2009 | | Male | X | Female |
| Country of habitual residence (immediately before removal or retention): | United Kingdom | | | | |
| Passport No: | | | | | |
| Nationality: | | | | | |
| Dual nationality: | British American | | | | |
| Dual nationality Passport No: | British – ?    US - ███████ | | | | |
| Identity card: | | | | | |

**Child 2**

| | | | | | |
|---|---|---|---|---|---|
| Surname: | | | | | |
| First Names:<br><br>(Please say if the child is generally known by a name other than their official name) | | | | | |
| Date of Birth (dd/mm/yyyy): | | | Male | | Female |
| Country of habitual residence (immediately before removal or retention): | | | | | |
| Passport No: | | | | | |
| Nationality: | | | | | |
| Dual nationality:<br><br>Dual nationality Passport No:<br><br>Identity card: | | | | | |

**Child 3**

| | | | | | |
|---|---|---|---|---|---|
| Surname: | | | | | |
| First Names:<br><br>(Please say if the child is generally known by a name other than their official name) | | | | | |
| Date of Birth (dd/mm/yyyy): | | | Male | | Female |
| Country of habitual residence (immediately before removal or retention): | | | | | |
| Passport No: | | | | | |
| Nationality: | | | | | |
| Dual nationality:<br><br>Dual nationality Passport No:<br><br>Identity card: | | | | | |

**Child 4**

| | |
|---|---|
| Surname: | |
| First Names: | |

| | |
|---|---|
| (Please say if the child is generally known by a name other than their official name) | |
| Date of Birth (dd/mm/yyyy): | | Male | | Female |
| Country of habitual residence (immediately before removal or retention): | |
| Passport No: | |
| Nationality: | |
| Dual nationality:<br><br>Dual nationality Passport No:<br><br>Identity card: | |

**Child 5**

| | |
|---|---|
| Surname: | |
| First Names:<br><br>(Please say if the child is generally known by a name other than their official name) | |
| Date of Birth (dd/mm/yyyy): | | Male | | Female |
| Country of habitual residence (immediately before removal or retention): | |
| Passport No: | |
| Nationality: | |
| Dual nationality:<br><br>Dual nationality Passport No:<br><br>Identity card: | |

**Child 6**

| | |
|---|---|
| Surname: | |
| First Names:<br><br>(Please say if the child is generally known by a name other than their official name) | |

| Date of Birth (dd/mm/yyyy): | | | Male | | Female |
|---|---|---|---|---|---|
| Country of habitual residence (immediately before removal or retention): | | | | | |
| Passport No: | | | | | |
| Nationality: | | | | | |
| Dual nationality: | | | | | |
| Dual nationality Passport No: | | | | | |
| Identity card: | | | | | |

**Section 3: Details of parents.**

**Parent 1**

| Surname: | Steelman | | | | |
|---|---|---|---|---|---|
| First Names: (Please say if the parent is generally known by a name other than their official name) | Aurea Jane | | | | |
| Date of Birth (dd/mm/yyyy): | 12/01/1974 | | Male | X | Female |
| Country of habitual residence: | United Kingdom | | | | |
| Passport No: | ███████ | | | | |
| Nationality: | British | | | | |
| Dual nationality: Dual nationality Passport No: Identity card: | | | | | |
| Occupation | Civil Servant – Foreign, Commonwealth and Development Office | | | | |

**Parent 2**

| Surname: | Steelman | | | | |
|---|---|---|---|---|---|
| First Names: (Please say if the parent is generally known by a name other than their official name) | Jason Andrew | | | | |
| Date of Birth (dd/mm/yyyy): | 18/12/1975 | X | Male | | Female |

| | |
|---|---|
| Country of habitual residence: | USA |
| Passport No: | |
| Nationality: | |
| Dual nationality: | American and British |
| Dual nationality Passport No: | |
| Identity card: | |
| Occupation | Unemployed |

| | |
|---|---|
| Date and place of marriage (if applicable): | 14 February 2009, Upshur County, Texas, USA |
| Date and place of divorce (if applicable): | 15 April 2021, United Kingdom |
| Date and place of civil partnership or other same sex registered partnership (if applicable): | N/A |
| Date and place of dissolution of civil partnership or other same sex registered partnership (if applicable): | N/A |

**Section 4: Details of requesting individual <u>or</u> institution (complete 4(a) or 4(b) NOT both).**

**4(a): Requesting individual**

| | |
|---|---|
| Surname: | Steelman |
| First Names: | Aurea Jane |
| Relationship to child(ren): | Mother |
| Contact Address: | 52 Church Avenue<br>Harrogate<br>North Yorkshire<br>United Kingdom |
| Postcode: | HG1 4HG |
| Full Telephone Number: | 00 44 (0) 7391889726 |

| | |
|---|---|
| (including area code): | |
| Mobile Telephone Number: | |
| Email: | |

**4(b): Requesting institution**

| | |
|---|---|
| Institution: | |
| Surname of contact person: | |
| First name of contact person: | |
| Institution's relationship with the child(ren): | |
| Contact Address: | |
| Postcode: | |
| Full Telephone Number (including area code): | |
| Mobile Telephone Number: | |
| Email: | |

**Details of your legal adviser (if any). Please note you should only provide details of a solicitor if you are actually instructing one in relation to this matter.**

| | |
|---|---|
| Name of solicitor: | |
| Contact Address: | |
| Full Telephone Number (including area code): | |
| Fax No: | |
| Email: | |

Please indicate by putting a cross in one of the boxes below whether you wish the ICACU to correspond directly with you or with your solicitor.  You should be aware that there could be cost implications for you if we correspond with your solicitor.

| Please only correspond with me | | Please correspond with my solicitor | |
|---|---|---|---|

**Section 5: Details of person alleged to have removed/retained/prevented contact with child(ren) and current location of child(ren).**

| | |
|---|---|
| Surname: | Steelman |
| First Names: <br><br> (Please say if the person is generally known by a name other than their official name) | Jason Andrew |
| Relationship to child(ren): | Father |
| Details of location of child(ren) including any known address in the other country: <br><br> <u>Please provide as much information as possible</u> | 1811 Greenway, Gilmer, TX75644, U.S.A. <br><br> This property belongs to Jason Steelman's mother and the property has been sold.  Jason is moving to the city of Longview in the next 2 weeks, taking ███████████ with him.  I do not have this new address in Longview. <br><br> Jason Andrew Steelman's mobile phone numbers:- <br><br> +44 (0) 7840680129 <br><br> +1 (903) 4020731 <br><br> ████████████'s mobile phone number:- <br><br> +44 (0) 7784 987030 <br><br> ████ has been enrolled in Pine Tree High School:- <br><br> Address:  900 Northwest Drive or 1005 W. Fairmont Street, Longview, TX75604 |

| Details of other persons who might be able to supply additional information relating to the location of the child(ren) | Anita Steelman (paternal grandmother to ████████████). <br><br> Karen Steelman Shirley (paternal aunt to ████████████). |
|---|---|

**Section 6: Request for return.  You should only complete this section if you are making an application for return of the child(ren).**

**6(a): Date and circumstances of wrongful removal or retention**

Please provide brief details of events leading up to removal or retention of the child(ren) and explain the basis for saying that England or Wales was the country of habitual residence of the child(ren) immediately before the date of the removal or retention.  You should list any supporting documents you are sending with the application form in section 10.

On 21 July, ███'s school called me to say she had been talking about going to live with her father in the US. I spoke to both ███ and her father about this. ███'s father assured me she wouldn't be able to live with him, as he would be going travelling from the Autumn and she needs to finish her education in the UK. ███ assured me she was coming back after the holidays and I asked why school thought she wasn't, she said they had misunderstood.

███ went to stay with her father from 28th July to 29th August, for the summer school holidays, at his address in Texas.

On 2nd August, I received a WhatsApp message from my daughter, asking if we could have a chat. I called my daughter, and she told me she is going to live with her father in Texas and wasn't coming back after her holiday. I explained to ███ that she lives in the UK with me and that it was her parent's decision to make. I said she needs to come back for school and her life is here. Her father said on the call, that in Texas children from the age of 12 have the right to choose which parent they live with. I noted this as the case too, in the UK (via WhatsApp message to ███'s father after the call) but while ███ had a say on which parent she preferred to live with, at 14, it wasn't ultimately her decision to make.

I have had no contact with ███'s father since he confirmed she had arrived in Houston ok on 28 July. I have attempted several times to contact him via phone/email/messaging about ███ but with no response. I reported the abduction to the UK police on 2nd August and they confirmed they would not investigate the matter, as it was a civil matter and I should seek legal advice.

███ has a confirmed return flight ticket back to the UK on 29 August. ███ travelled as an unaccompanied minor, with a KLM airline chaperone. Copy of flight ticket included document (4).

███'s father went to live permanently in the US, in November 2021. He was previously living in Glasgow, Scotland from April 2020. ███ has travelled to the US for Christmas holidays in 2022 and he took her on holiday to the Republic of Ireland for the Easter 2023 holidays. She returned both times on the dates agreed with her father.

███ has lived in the UK all her life, she was born in the UK, grew up and went to school here. There was a period of living in Kenya with both parents between June 2018 and March 2020. I was working at the British High Commission, Nairobi as HM Consul and ███ completed her primary education in Kenya. ███ and her father left Kenya due to the COVID pandemic in March 2020 and ███ stayed with her father in Glasgow, until she started secondary school in September 2020.

███ boarded at Ashville College, Harrogate at the start of her secondary education. This was while I continued to work overseas for the Foreign, Commonwealth and Development Office. Once I had returned from my overseas work in April 2022, arrangements were made for ███ to attend a public secondary school and live with me permanently in Harrogate, I moved there on 1 October 2022. ███ started school at St John Fisher Catholic school in November 2022 and I include ███'s Year 9 Summer school report, to demonstrate this, document (7)

Living in Harrogate, maintained ███'s connection to the area from her pervious school and we are also living close to my immediate family and friends in the area (West and North Yorkshire). ███ has made friends at her new school and maintains contact with some of her friends from Ashville College. I continue to work for the FCDO, full-time and remotely from my home address in Harrogate, to support taking care of ███.

**6(b): Factual or legal grounds justifying the request for return of the child(ren)**

Please provide evidence of your rights of custody with respect to the child(ren).

Z:\Division - PIE\Countries - EUR\Great Britain and Northern Ireland\CASE FILES\- INCOMING CASES -\STEELMAN, Chloe (Access)\Hague Application\Steelman - Hague Application (Access).docx

9

**6(c): Arrangements for the return of the child(ren)**

If applying for return of the child(ren) please confirm you are prepared to travel to the country to which the child(ren) have been taken, both to attend the court hearing if necessary, and to collect the child(ren) should the application be successful or indicate any other person who could do so on your behalf

**6(d): Amicable resolution of the issues**

If you have undertaken mediation to try and secure the voluntary return of the child(ren) please give details here.  If you have not done so would you like the other parent to be asked about a voluntary return?  Would you like to undertake mediation with the other parent if that is an available option?

I would undertake mediation with the other parent, and I have offered this to him, as a way to resolve this matter but so far, this offer hasn't been responded to.

**Section 7: Request for contact.  You should only complete this section if you are making an application for contact with the child(ren) or if you are seeking recognition and/or enforcement of an existing contact order (this could be a contact provision in a child arrangements order).**

**7(a): Circumstances relating to the prevention of contact with the child(ren).**

| Please provide brief details relating to the prevention of the exercise of your rights of contact |
| --- |
| My ex-husband has ceased communicating with me since the end of July.  He has not responded to any of my messages, emails or taken my calls to discuss my daughter.<br><br>My daughter said that if I try to return to her back to the UK, she would no longer be in contact with me.  Despite me continuing to message and call, she is not responding.  She has however, read WhatsApp messages, I have sent.<br><br>I have no current address for my daughter, only contact with the school she is currently attending. |

**7(b): Proposed arrangements for contact.**

| Please provide your proposal for the contact you would like to have with your child(ren) |
| --- |
| I would like to visit my daughter 2 to 3 times a year in the USA and for her to visit me twice a year in the UK.<br><br>I would like regular telephone contact with my daughter, once a week.<br><br>I would like regular phone messaging contact with my daughter. |

**7(c): Amicable resolution of the issues**

| If you have undertaken mediation to try and agree contact arrangements please give details here. If you have not done so would you like to undertake mediation with the other parent if that is an available option? |
| --- |
| I have tried to mediate with my ex-husband, through the charity Re-unite but he has not responded to any of their requests, despite committing to do so in response to the letter from the US State Department about the Hague application that I have filed. |

**Section 8: Request for registration and/or enforcement of a 'parental responsibility' order (other than an order for contact) including a custody order. You should only complete if this section if you are making an application for registration and/or enforcement of a 'parental responsibility' order.**

**8(a): Circumstances relating to the making of the order**

| Please provide brief details relating to the making of the order |
| --- |
|  |

**8(b): Reasons for seeking enforcement of the order.**

| Please only complete if you are seeking enforcement or enforcement immediately after registration. Provide brief details of the alleged breach of the order. |
| --- |

**Section 9: Civil (including family) proceedings that have concluded or are in progress**

| In England and Wales (you should attach copies of any court orders which have been made) |
|---|
| |

| Outside England and Wales |
|---|
| |

| If there are proceedings in progress either in or outside England and Wales please give the date of next hearing if known or any other relevant information about the court timetable |
|---|

**Section 10: List of documents attached**

You should list here all documents you are sending in support of your application including copies of any relevant court orders, statements or affidavits, and recent colour photographs of the other parent and the child(ren). Please include copies of the child(ren)'s birth certificate and (if you are or have been married or in a civil partnership with the other parent) your marriage or civil partnership certificate (full A4 size copies which include details of both parents) or your divorce or dissolution decree.   If you are attaching documents in support of the child's habitual residence in this country you should also list those here.

2.  Copy of birth certificate for ▮▮▮▮▮▮▮▮▮▮▮▮▮.
3.  Copy of divorce absolute – Jason Andrew Steelman and Aurea Jane Steelman.
4.  Return flight ticket for 29 August, for ▮▮▮▮▮▮▮▮▮ from Houston, Texas to Manchester, UK.
5.  Letter from the NHS, confirming registration of ▮▮▮▮▮▮▮▮▮▮▮ at Moss Healthcare, Harrogate.
6.  Letter from Ashville College, Harrogate dated 25 February 2020, to demonstrate ▮▮▮▮ ▮▮▮▮▮▮ s habitual residence in the UK.
7.  Year 9 school report from St John Fisher Catholic School, for ▮▮▮▮▮▮▮▮▮ – July 2023
8.  Copy photograph of Aurea Jane Steelman (mother) and ▮▮▮▮▮▮▮▮▮▮▮ (daughter) taken at Flamingo Land theme park, North Yorkshire, England on 9 July 2023.

**Section 11: Applicant's authorisation**

*I authorise the requested Central Authority and its agents to act on my behalf and to do all things reasonable and necessary in connection with this application.*

| Signature | *Aurea Steelman* |
|---|---|

| Full name of applicant (block capitals) | AUREA JANE STEELMAN |
|---|---|
| Date (dd/mm/yyyy): | 18/12/2023 |

*Changes to legislation:* Children Act 1989, Part I is up to date with all changes known to be in force on or before
20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made
appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes



# Children Act 1989

## 1989 CHAPTER 41

### PART I

### INTRODUCTORY

**1    Welfare of the child.**

(1) When a court determines any question with respect to—

    (a)    the upbringing of a child; or

    (b)    the administration of a child's property or the application of any income arising from it,

the child's welfare shall be the court's paramount consideration.

(2) In any proceedings in which any question with respect to the upbringing of a child arises, the court shall have regard to the general principle that any delay in determining the question is likely to prejudice the welfare of the child.

[F1(2A) A court, in the circumstances mentioned in subsection (4)(a) or (7), is as respects each parent within subsection (6)(a) to presume, unless the contrary is shown, that involvement of that parent in the life of the child concerned will further the child's welfare.

(2B) In subsection (2A) "involvement" means involvement of some kind, either direct or indirect, but not any particular division of a child's time.]

(3) In the circumstances mentioned in subsection (4), a court shall have regard in particular to—

    (a)    the ascertainable wishes and feelings of the child concerned (considered in the light of his age and understanding);

    (b)    his physical, emotional and educational needs;

    (c)    the likely effect on him of any change in his circumstances;

    (d)    his age, sex, background and any characteristics of his which the court considers relevant;

    (e)    any harm which he has suffered or is at risk of suffering;

---

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

---

    (f)   how capable each of his parents, and any other person in relation to whom the court considers the question to be relevant, is of meeting his needs;

    (g)   the range of powers available to the court under this Act in the proceedings in question.

(4) The circumstances are that—

    (a)   the court is considering whether to make, vary or discharge a section 8 order, and the making, variation or discharge of the order is opposed by any party to the proceedings; or

    (b)   the court is considering whether to make, vary or discharge [**F2**a special guardianship order or] an order under Part IV.

(5) Where a court is considering whether or not to make one or more orders under this Act with respect to a child, it shall not make the order or any of the orders unless it considers that doing so would be better for the child than making no order at all.

[**F3**(6) In subsection (2A) "parent" means parent of the child concerned; and, for the purposes of that subsection, a parent of the child concerned—

    (a)   is within this paragraph if that parent can be involved in the child's life in a way that does not put the child at risk of suffering harm; and

    (b)   is to be treated as being within paragraph (a) unless there is some evidence before the court in the particular proceedings to suggest that involvement of that parent in the child's life would put the child at risk of suffering harm whatever the form of the involvement.

(7) The circumstances referred to are that the court is considering whether to make an order under section 4(1)(c) or (2A) or 4ZA(1)(c) or (5) (parental responsibility of parent other than mother).]

---

**Textual Amendments**

**F1**   S. 1(2A)(2B) inserted (22.10.2014) by Children and Families Act 2014 (c. 6), **ss. 11(2)**, 139(6); S.I. 2014/2749, art. 3 (with art. 4)

**F2**   Words in s. 1(4)(b) inserted (30.12.2005) by 2002 c. 38, ss. 115(3), 148 (with Sch. 4 paras. 6-8); S.I. 2005/2213, **art. 2(k)**

**F3**   S. 1(6)(7) inserted (22.10.2014) by Children and Families Act 2014 (c. 6), **ss. 11(3)**, 139(6); S.I. 2014/2749, art. 3 (with art. 4)

**Modifications etc. (not altering text)**

**C1**   S. 1(2)(3)(a)-(f) applied with modifications (14. 10. 1991) by S.I. 1991/1395, r. 11(1) (as amended (8.12.2008) by The Family Proceedings Courts (Children Act 1989) (Amendment) Rules 2008, (S.I. 2008/2858), {rule 7})

**Commencement Information**

**I1**   S. 1 wholly in force at 14.10.1991 see s. 108(2(3) and S.I. 1991/828, **art. 3(2)**

---

**2**      **Parental responsibility for children.**

(1) Where a child's father and mother were married to [**F4**, or civil partners of,] each other at the time of his birth, they shall each have parental responsibility for the child.

[**F5**(1A) Where a child—

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

    (a)   has a parent by virtue of section 42 of the Human Fertilisation and Embryology Act 2008; or

    (b)   has a parent by virtue of section 43 of that Act and is a person to whom section 1(3) of the Family Law Reform Act 1987 applies,

the child's mother and the other parent shall each have parental responsibility for the child.

(2) Where a child's father and mother were not married to [**F6**, or civil partners of,] each other at the time of his birth—

    (a)   the mother shall have parental responsibility for the child;

    (b)   the father [**F7**shall have parental responsibility for the child if he has acquired it (and has not ceased to have it)] in accordance with the provisions of this Act.]

[**F8**(2A) Where a child has a parent by virtue of section 43 of the Human Fertilisation and Embryology Act 2008 and is not a person to whom section 1(3) of the Family Law Reform Act 1987 applies—

    (a)   the mother shall have parental responsibility for the child;

    (b)   the other parent shall have parental responsibility for the child if she has acquired it (and has not ceased to have it) in accordance with the provisions of this Act.]

(3) References in this Act to a child whose father and mother were, or (as the case may be) were not, married to [**F9**, or civil partners of,] each other at the time of his birth must be read with section 1 of the **M1**Family Law Reform Act 1987 (which extends their meaning).

(4) The rule of law that a father is the natural guardian of his legitimate child is abolished.

(5) More than one person may have parental responsibility for the same child at the same time.

(6) A person who has parental responsibility for a child at any time shall not cease to have that responsibility solely because some other person subsequently acquires parental responsibility for the child.

(7) Where more than one person has parental responsibility for a child, each of them may act alone and without the other (or others) in meeting that responsibility; but nothing in this Part shall be taken to affect the operation of any enactment which requires the consent of more than one person in a matter affecting the child.

(8) The fact that a person has parental responsibility for a child shall not entitle him to act in any way which would be incompatible with any order made with respect to the child under this Act.

(9) A person who has parental responsibility for a child may not surrender or transfer any part of that responsibility to another but may arrange for some or all of it to be met by one or more persons acting on his behalf.

(10) The person with whom any such arrangement is made may himself be a person who already has parental responsibility for the child concerned.

(11) The making of any such arrangement shall not affect any liability of the person making it which may arise from any failure to meet any part of his parental responsibility for the child concerned.

---

***Changes to legislation:*** *Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

---

**Textual Amendments**

**F4**    Words in s. 2(1) inserted (2.12.2019) by The Civil Partnership (Opposite-sex Couples) Regulations 2019 (S.I. 2019/1458), regs. 1(2), **15(2)**

**F5**    S. 2(1A) inserted (6.4.2009) by Human Fertilisation and Embryology Act 2008 (c. 22), ss. 56, 68, **Sch. 6 para. 26(2)**; S.I. 2009/479, **art. 6(1)(e)**

**F6**    Words in s. 2(2) inserted (2.12.2019) by The Civil Partnership (Opposite-sex Couples) Regulations 2019 (S.I. 2019/1458), regs. 1(2), **15(2)**

**F7**    Words in s. 2(2) substituted (1.12.2003) by 2002 c. 38, ss. 111(5), 148 (with Sch. 4 paras. 6-8); S.I. 2003/3079, **art. 2(2)(a)**

**F8**    S. 2(2A) inserted (6.4.2009) by Human Fertilisation and Embryology Act 2008 (c. 22), ss. 56, 68, **Sch. 6 para. 26(3)**; S.I. 2009/479, **art. 6(1)(e)**

**F9**    Words in s. 2(3) inserted (2.12.2019) by The Civil Partnership (Opposite-sex Couples) Regulations 2019 (S.I. 2019/1458), regs. 1(2), **15(2)**

**Commencement Information**

**I2**    S. 2 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

**Marginal Citations**

**M1**    1987 c. 42.

---

**3        Meaning of "parental responsibility".**

(1) In this Act "parental responsibility" means all the rights, duties, powers, responsibilities and authority which by law a parent of a child has in relation to the child and his property.

(2) It also includes the rights, powers and duties which a guardian of the child's estate (appointed, before the commencement of section 5, to act generally) would have had in relation to the child and his property.

(3) The rights referred to in subsection (2) include, in particular, the right of the guardian to receive or recover in his own name, for the benefit of the child, property of whatever description and wherever situated which the child is entitled to receive or recover.

(4) The fact that a person has, or does not have, parental responsibility for a child shall not affect—

(a)    any obligation which he may have in relation to the child (such as a statutory duty to maintain the child); or

(b)    any rights which, in the event of the child's death, he (or any other person) may have in relation to the child's property.

(5) A person who—

(a)    does not have parental responsibility for a particular child; but

(b)    has care of the child,

may (subject to the provisions of this Act) do what is reasonable in all the circumstances of the case for the purpose of safeguarding or promoting the child's welfare.

---

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

---

> **Commencement Information**
>
> I3    S. 3 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, art. 3(2)

**4    Acquisition of parental responsibility by father.**

(1) Where a child's father and mother were not married to [**F10**, or civil partners of,] each other at the time of his birth [**F11**, the father shall acquire parental responsibility for the child if—

    (a)  he becomes registered as the child's father under any of the enactments specified in subsection (1A);

    (b)  he and the child's mother make an agreement (a "parental responsibility agreement") providing for him to have parental responsibility for the child; or

    (c)  the court, on his application, orders that he shall have parental responsibility for the child.]

[**F12**(1A) The enactments referred to in subsection (1)(a) are—

    (a)  paragraphs (a), (b) and (c) of section 10(1) and of section 10A(1) of the Births and Deaths Registration Act 1953;

    (b)  paragraphs (a), (b)(i) and (c) of section 18(1), and sections 18(2)(b) and 20(1)(a) of the Registration of Births, Deaths and Marriages (Scotland) Act 1965; and

    (c)  sub-paragraphs (a), (b) and (c) of Article 14(3) of the Births and Deaths Registration (Northern Ireland) Order 1976.

(1B) The [**F13**Secretary of State] may by order amend subsection (1A) so as to add further enactments to the list in that subsection.]

(2) No parental responsibility agreement shall have effect for the purposes of this Act unless—

    (a)  it is made in the form prescribed by regulations made by the Lord Chancellor; and

    (b)  where regulations are made by the Lord Chancellor prescribing the manner in which such agreements must be recorded, it is recorded in the prescribed manner.

[**F14**(2A) A person who has acquired parental responsibility under subsection (1) shall cease to have that responsibility only if the court so orders.

(3) The court may make an order under subsection (2A) on the application—

    (a)  of any person who has parental responsibility for the child; or

    (b)  with the leave of the court, of the child himself,

subject, in the case of parental responsibility acquired under subsection (1)(c), to section 12(4).]

(4) The court may only grant leave under subsection (3)(b) if it is satisfied that the child has sufficient understanding to make the proposed application.

---

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

---

**Textual Amendments**

**F10**   Words in s. 4(1) inserted (2.12.2019) by The Civil Partnership (Opposite-sex Couples) Regulations 2019 (S.I. 2019/1458), regs. 1(2), **15(3)**

**F11**   Words in s. 4(1) substituted (1.12.2003) by 2002 c. 38, ss. 111(2), 148 (with Sch. 4 paras. 6-8); S.I. 2003/3079, **art. 2(2)(a)**

**F12**   S. 4(1A)(1B) inserted (1.12.2003) by 2002 c. 38, ss. 111(3), 148 (with Sch. 4 paras. 6-8); S.I. 2003/3079, **art. 2(2)(a)**

**F13**   Words in s. 4(1B) substituted (12.1.2004) by The Transfer of Functions (Children, Young People and Families) Order 2003 (S.I. 2003/3191), art. 6, **Sch. para. 1**

**F14**   S. 4(2A)(3) substituted (1.12.2003) for s. 4(3) by 2002 c. 38, ss. 111(4), 148 (with Sch. 4 paras. 6-8); S.I. 2003/3079, **art. 2(2)(a)**

**Modifications etc. (not altering text)**

**C2**   S. 4(1B): transfer of functions (12.1.2004) by The Transfer of Functions (Children, Young People and Families) Order 2003 (S.I. 2003/3191), **arts. 3(a), 4**

**Commencement Information**

**I4**   S. 4 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

## [F15 4ZA  Acquisition of parental responsibility by second female parent

(1) Where a child has a parent by virtue of section 43 of the Human Fertilisation and Embryology Act 2008 and is not a person to whom section 1(3) of the Family Law Reform Act 1987 applies, that parent shall acquire parental responsibility for the child if—

    (a) she becomes registered as a parent of the child under any of the enactments specified in subsection (2);

    (b) she and the child's mother make an agreement providing for her to have parental responsibility for the child; or

    (c) the court, on her application, orders that she shall have parental responsibility for the child.

(2) The enactments referred to in subsection (1)(a) are—

    (a) paragraphs (a), (b) and (c) of section 10(1B) and of section 10A(1B) of the Births and Deaths Registration Act 1953;

    (b) paragraphs (a), (b) and (d) of section 18B(1) and sections 18B(3)(a) and 20(1)(a) of the Registration of Births, Deaths and Marriages (Scotland) Act 1965; and

    (c) sub-paragraphs (a), (b) and (c) of Article 14ZA(3) of the Births and Deaths Registration (Northern Ireland) Order 1976.

(3) The Secretary of State may by order amend subsection (2) so as to add further enactments to the list in that subsection.

(4) An agreement under subsection (1)(b) is also a "parental responsibility agreement", and section 4(2) applies in relation to such an agreement as it applies in relation to parental responsibility agreements under section 4.

(5) A person who has acquired parental responsibility under subsection (1) shall cease to have that responsibility only if the court so orders.

Changes to legislation: *Children Act 1989, Part I is up to date with all changes known to be in force on or before*
*20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made*
*appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

(6) The court may make an order under subsection (5) on the application—

    (a) of any person who has parental responsibility for the child; or

    (b) with the leave of the court, of the child himself,

subject, in the case of parental responsibility acquired under subsection (1)(c), to section 12(4).

(7) The court may only grant leave under subsection (6)(b) if it is satisfied that the child has sufficient understanding to make the proposed application.]

---

**Textual Amendments**

**F15** S. 4ZA inserted (6.4.2009) by Human Fertilisation and Embryology Act 2008 (c. 22), ss. 56, 68, **Sch. 6 para. 27**; S.I. 2009/479, **art. 6(1)(e)**

---

[**F16 4A    Acquisition of parental responsibility by step-parent**

(1) Where a child's parent ("parent A") who has parental responsibility for the child is married to [**F17**, or a civil partner of,] a person who is not the child's parent ("the step-parent")—

    (a) parent A or, if the other parent of the child also has parental responsibility for the child, both parents may by agreement with the step-parent provide for the step-parent to have parental responsibility for the child; or

    (b) the court may, on the application of the step-parent, order that the step-parent shall have parental responsibility for the child.

(2) An agreement under subsection (1)(a) is also a "parental responsibility agreement", and section 4(2) applies in relation to such agreements as it applies in relation to parental responsibility agreements under section 4.

(3) A parental responsibility agreement under subsection (1)(a), or an order under subsection (1)(b), may only be brought to an end by an order of the court made on the application—

    (a) of any person who has parental responsibility for the child; or

    (b) with the leave of the court, of the child himself.

(4) The court may only grant leave under subsection (3)(b) if it is satisfied that the child has sufficient understanding to make the proposed application.]

---

**Textual Amendments**

**F16** S. 4A inserted (30.12.2005) by 2002 c. 38, ss. 112, 148 (with Sch. 4 paras. 6-8); S.I. 2005/2213, **art. 2(k)**

**F17** Words in s. 4A(1) inserted (30.12.2005) by Civil Partnership Act 2004 (c. 33), **s. 75(2)**; S.I. 2005/3175, **art. 2(9)**

---

**5        Appointment of guardians.**

(1) Where an application with respect to a child is made to the court by any individual, the court may by order appoint that individual to be the child's guardian if—

    (a) the child has no parent with parental responsibility for him; or

---

***Changes to legislation:*** *Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

---

   (b)   a [**F18**parent, guardian or special guardian of the child's was named in a child arrangements order as a person with whom the child was to live and] has died while the order was in force [**F19**; or

   (c)   paragraph (b) does not apply, and the child's only or last surviving special guardian dies.]

(2) The power conferred by subsection (1) may also be exercised in any family proceedings if the court considers that the order should be made even though no application has been made for it.

(3) A parent who has parental responsibility for his child may appoint another individual to be the child's guardian in the event of his death.

(4) A guardian of a child may appoint another individual to take his place as the child's guardian in the event of his death [**F20**; and a special guardian of a child may appoint another individual to be the child's guardian in the event of his death].

(5) An appointment under subsection (3) or (4) shall not have effect unless it is made in writing, is dated and is signed by the person making the appointment or—

   (a)   in the case of an appointment made by a will which is not signed by the testator, is signed at the direction of the testator in accordance with the requirements of section 9 of the **M2**Wills Act 1837; or

   (b)   in any other case, is signed at the direction of the person making the appointment, in his presence and in the presence of two witnesses who each attest the signature.

(6) A person appointed as a child's guardian under this section shall have parental responsibility for the child concerned.

(7) Where—

   (a)   on the death of any person making an appointment under subsection (3) or (4), the child concerned has no parent with parental responsibility for him; or

   (b)   immediately before the death of any person making such an appointment, a [**F21**child arrangements order was in force in which the person was named as a person with whom the child was to live or the person][**F22**was the child's only (or last surviving) special guardian],

the appointment shall take effect on the death of that person.

(8) Where, on the death of any person making an appointment under subsection (3) or (4)—

   (a)   the child concerned has a parent with parental responsibility for him; and

   (b)   subsection (7)(b) does not apply,

the appointment shall take effect when the child no longer has a parent who has parental responsibility for him.

(9) Subsections (1) and (7) do not apply if the [**F23**child arrangements] order referred to in paragraph (b) of those subsections [**F24**also named] a surviving parent of the child [**F25**as a person with whom the child was to live].

(10) Nothing in this section shall be taken to prevent an appointment under subsection (3) or (4) being made by two or more persons acting jointly.

(11) Subject to any provision made by rules of court, no court shall exercise the High Court's inherent jurisdiction to appoint a guardian of the estate of any child.

*Changes to legislation:* Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes

(12) Where rules of court are made under subsection (11) they may prescribe the circumstances in which, and conditions subject to which, an appointment of such a guardian may be made.

(13) A guardian of a child may only be appointed in accordance with the provisions of this section.

**Textual Amendments**

**F18**  Words in s. 5(1)(b) substituted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(2)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**F19**  S. 5(1)(c) and preceding word inserted (30.12.2005) by 2002 c. 38, ss. 115(4)(a)(ii), 148 (with Sch. 4 paras. 6-8); S.I. 2005/2213, **art. 2(k)**

**F20**  Words in s. 5(4) inserted (30.12.2005) by 2002 c. 38, ss. 115(4)(b), 148 (with Sch. 4 paras. 6-8); S.I. 2005/3213, **art. 2(k)**

**F21**  Words in s. 5(7)(b) substituted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(3)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**F22**  Words in s. 5(7) inserted (30.12.2005) by 2002 c. 38, ss. 115(4)(c), 148 (with Sch. 4 paras. 6-8); S.I. 2005/2213, **art. 2(k)**

**F23**  Words in s. 5(9) substituted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(4)(a)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**F24**  Words in s. 5(9) substituted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(4)(b)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**F25**  Words in s. 5(9) inserted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(4)(c)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**Commencement Information**

**I5**  S. 5 except s. 5(11)(12) in force at 14.10.1991 by S.I. 1991/828, **art. 3(2)** and s. 5(11)(12) wholly in force 1.2.1992 by S.I. 1991/828, **art. 3** as amended by S.I. 1991/1990, **art. 2**.

**Marginal Citations**

**M2**  1837 c. 26.

**6      Guardians: revocation and disclaimer.**

(1) An appointment under section 5(3) or (4) revokes an earlier such appointment (including one made in an unrevoked will or codicil) made by the same person in respect of the same child, unless it is clear (whether as the result of an express provision in the later appointment or by any necessary implication) that the purpose of the later appointment is to appoint an additional guardian.

(2) An appointment under section 5(3) or (4) (including one made in an unrevoked will or codicil) is revoked if the person who made the appointment revokes it by a written and dated instrument which is signed—

   (a)   by him; or

   (b)   at his direction, in his presence and in the presence of two witnesses who each attest the signature.

(3) An appointment under section 5(3) or (4) (other than one made in a will or codicil) is revoked if, with the intention of revoking the appointment, the person who made it—

   (a)   destroys the instrument by which it was made; or

**Changes to legislation:** *Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

    (b)  has some other person destroy that instrument in his presence.

[F26](3A) An appointment under section 5(3) or (4) (including one made in an unrevoked will or codicil) is revoked if the person appointed is the spouse of the person who made the appointment and either—

    (a)  [F27]... a court of civil jurisdiction in England and Wales dissolves or annuls the marriage, or

    (b)  the marriage is dissolved or annulled and the divorce or annulment is entitled to recognition in England and Wales by virtue of Part II of the Family Law Act 1986,

unless a contrary intention appears by the appointment.]

[F28](3B) An appointment under section 5(3) or (4)(including one made in an unrevoked will or codicil) is revoked if the person appointed is the civil partner of the person who made the appointment and either—

    (a)  an order of a court of civil jurisdiction in England and Wales dissolves or annuls the civil partnership, or

    (b)  the civil partnership is dissolved or annulled and the dissolution or annulment is entitled to recognition in England and Wales by virtue of Chapter 3 of Part 5 of the Civil Partnership Act 2004,

unless a contrary intention appears by the appointment.]

(4) For the avoidance of doubt, an appointment under section 5(3) or (4) made in a will or codicil is revoked if the will or codicil is revoked.

(5) A person who is appointed as a guardian under section 5(3) or (4) may disclaim his appointment by an instrument in writing signed by him and made within a reasonable time of his first knowing that the appointment has taken effect.

(6) Where regulations are made by the Lord Chancellor prescribing the manner in which such disclaimers must be recorded, no such disclaimer shall have effect unless it is recorded in the prescribed manner.

(7) Any appointment of a guardian under section 5 may be brought to an end at any time by order of the court—

    (a)  on the application of any person who has parental responsibility for the child;

    (b)  on the application of the child concerned, with leave of the court; or

    (c)  in any family proceedings, if the court considers that it should be brought to an end even though no application has been made.

**Textual Amendments**

**F26**  S. 6(3A) inserted (8.11.1995 with effect as mentioned in s. 4(2) of the amending Act) ) by 1995 c. 41, **ss. 4(1)(2)**

**F27**  Words in s. 6(3A)(a) omitted (6.4.2022) by virtue of Divorce, Dissolution and Separation Act 2020 (c. 11), s. 8(1)(8), **Sch. para. 52**; S.I. 2022/283, reg. 2

**F28**  S. 6(3B) inserted (5.12.2005) by Civil Partnership Act 2004 (c. 33), **s. 76**; S.I. 2005/3175, **art. 2(1)**, Sch. 1

**Commencement Information**

**I6**  S. 6 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details) View outstanding changes*

7    **Welfare reports.**

(1) A court considering any question with respect to a child under this Act may—

    (a)   ask **[**[F29]an officer of the Service**][**[F30]or a Welsh family proceedings officer**]** ; or

    (b)   ask a local authority to arrange for—

        (i)  an officer of the authority; or

        (ii) such other person (other than **[**[F29]an officer of the Service**][**[F30]or a Welsh family proceedings officer**]** ) as the authority considers appropriate,

to report to the court on such matters relating to the welfare of that child as are required to be dealt with in the report.

(2) The Lord Chancellor may **[**[F31], after consulting the Lord Chief Justice,**]** make regulations specifying matters which, unless the court orders otherwise, must be dealt with in any report under this section.

(3) The report may be made in writing, or orally, as the court requires.

(4) Regardless of any enactment or rule of law which would otherwise prevent it from doing so, the court may take account of—

    (a)   any statement contained in the report; and

    (b)   any evidence given in respect of the matters referred to in the report,

in so far as the statement or evidence is, in the opinion of the court, relevant to the question which it is considering.

(5) It shall be the duty of the authority or **[**[F29]officer of the Service**][**[F30]or a Welsh family proceedings officer**]** to comply with any request for a report under this section.

**[**[F32](6) The Lord Chief Justice may nominate a judicial office holder (as defined in section 109(4) of the Constitutional Reform Act 2005) to exercise his functions under subsection (2).**]**

---

**Textual Amendments**

F29    Words in s. 7(1)(a)(b)(ii)(5) substituted (1.4.2001) by 2000 c. 43, s. 74, **Sch. 7 Pt. II para. 88(a)(b)**; S.I. 2001/919, **art. 2(f)(ii)**

F30    Words in s. 7(1)(a)(b)(ii)(5) inserted (1.4.2005) by Children Act 2004 (c. 31), s. 40, **Sch. 3 para. 6**; S.I. 2005/700, **art. 2(2)**

F31    Words in s. 7(2) inserted (3.4.2006) by Constitutional Reform Act 2005 (c. 4). s. 15(1), {Sch. 4 para. 204(2)}; S.I. 2006/1014, **art. 2(a)**, Sch. 1 para. 11(r)

F32    S. 7(6) inserted (3.4.2006) by Constitutional Reform Act 2005 (c. 4). s. 15(1), {Sch. 4 para. 204(3)}; S.I. 2006/1014, **art. 2(a)**, Sch. 1 para. 11(r)

**Commencement Information**

I7    S. 7 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

**Changes to legislation:**
Children Act 1989, Part I is up to date with all changes known to be in force on or before 20 January 2024. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations.
View outstanding changes

**Changes and effects yet to be applied to the whole Act associated Parts and Chapters:**
Whole provisions yet to be inserted into this Act (including any effects on those provisions):

– s. 4(1A)(aa) inserted by 2009 c. 24 Sch. 6 para. 21(3)
– s. 4(1C) inserted by 2009 c. 24 Sch. 6 para. 21(4)
– s. 4ZA(2)(aa) inserted by 2009 c. 24 Sch. 6 para. 22(3)
– s. 4ZA(3A) inserted by 2009 c. 24 Sch. 6 para. 22(4)
– s. 8(4)(k) inserted by 2021 c. 17 s. 52(1)
– s. 31A(4A) inserted by 2014 c. 6 s. 15(2)(b)